**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Case No. _____

**J. LEE BROWNING BELIZE TRUST,**

**Plaintiff,**

    **-vs-**

**ASPEN MOUNTAIN CONDOMINIUM ASSOCIATION, INC.,**
**a Colorado Not-For-Profit Corporation,**

**Defendants.**

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff J. Lee Browning Belize Trust, by its attorney, George M. Allen, states:

**Introduction - Nature of the Action**

1.    Plaintiff J. Lee Browning Belize Trust (hereafter, the Belize Trust) is a Trust organized under the law of Belize.  The Trust is situated in Belize and is a citizen of Belize.

2.    Plaintiff Belize Trust is the Owner of Condominium Unit 1-A in a project originally known as the Aspen Inn Apartments and now known as the Aspen Mountain Condominiums, in the City of Aspen, Colorado. The Condominiums are subject to a condominium governance regime adopted prior to the 1992 enactment of the Colorado Common Interest Ownership Act (CCIOA).

3.    Defendant Aspen Mountain Condominium Association, Inc. (AMCA) is a Colorado Not-For-Profit Corporation, and is the homeowners association for the Aspen Mountain Condominium Project.  AMCA is a citizen of Colorado.

### Jurisdiction and Venue

4.    Jurisdiction of this Court is based on diversity of citizenship under 28 U.S.C. §1332(a)(2), based on citizenship of the Plaintiff  Belize Trust in Belize, and citizenship of AMCA in Colorado.

5.    The matter in controversy in this action exceeds the sum of $75,000, exclusive of interest and costs, as required by 28 U.S.C. §1332(a).

6.    Venue is established in this District under 28 U.S.C. §1391(b)(1) and (2) on the basis of principal place of business of the defendant Association in this District, and the fact the real property is situated in this District.

### Parties

7.    The plaintiff J. Lee Browning Belize Trust is a separate legal personality, organized under the law of Belize and situated in Belize.  It is a Belize citizen.  The Trust is the current owner of Unit 1-A of the Aspen Mountain Condominium property.  Unit 1-A was conveyed to the Trust by way of a deed that conveyed all of the right, title and interest of the prior owner, which right, title and interest included the vested right to quiet enjoyment of the condominium unit.

8.    The defendant Aspen Mountain Condominium Association, Inc. is the homeowners association, which operates to govern and administer the Aspen Mountain

2

Condominium Association under applicable Colorado law pertaining to common interest

ownership properties.

**General Averments**

9.    The legal description of the property at issue in this litigation is:

CONDOMINIUM UNIT 1-A, Aspen Inn Apartments NOW KNOWN AS ASPEN MOUNTAIN CONDOMINIUMS according to the Map thereof recorded November 30, 1972 in Plat Book 4 at Page 332 as Reception No. 155597 and as further Defined and described in the Condominium Declaration for Aspen Inn Apartments recorded November 30, 1972 in Book 269 at Page 312 as Reception No. 155596 and the Amended and Restated Condominium Declaration for Aspen Mountain Condominiums Recorded July 6, 2010 as Reception No. 571810

10.    In June, 2014, that part of the sewage disposal line running from Unit 1-A to the

sanitary sewer system of Aspen became blocked at a point on the sewage disposal line lying

outside the physical boundaries of Unit 1-A, and within the general common elements of the

Aspen Mountain Condominium property.  As a result of the blockage, sewage backed-up into

Unit 1-A, rending the unit uninhabitable.

11.    The June, 2014 sewage blockage and backup was the fourth such incident within

the preceding several years.

12.    As a consequence of the June, 2014 backup, the plaintiff Trust was forced to incur

substantial expense for removal of sewage-soaked carpeting and flooring, as well as related and

disgusting elements of damages arising from sewage backup.  In addition, the Trust incurred

and/or became liable for costs of temporary lodging and other sewage backup-related damages.

13.    Over the past several years, it has been the intention and undertaking of the

plaintiff Trust to sell Unit 1-A.  From time to time Unit 1-A has been listed for sale with one or more licensed real estate brokers, for the purpose of offering Unit 1-A for sale.

14.     The Aspen real property market is broker-driven.  By that it is meant that the only effective means of offering Aspen real property for sale is through real estate brokers.

15.     It not practically feasible to sell Aspen property other than through licensed real estate brokers because the persons and business entities making up the market for Aspen real property are found throughout the United States and elsewhere in the world.  Most such prospective buyers are visitors to Aspen for only days or weeks, and their means of access to information about potential real property purchases is through engaging broker to identify what properties are available for sale. For the reasons set forth below, Aspen brokers will not list property with substantial distressed circumstances, such as that described in this Complaint due to the refusal to remedy the sewer defect in Unit 1-A.

16.     Notwithstanding repeated demand, defendant AMCA has failed and refused to make a definitive repair of the point in the sewage disposal line that causes repeated blockages of the line and resultant backups of sewage into Unit 1-A.  Instead of definitive repair, which will require replacement of deteriorated sewage pipe and probable straightening or lessening of a 90º turn in the sewage disposal line, defendant AMCA, defendant AMCA has been willing only to have the sewage disposal line "roto-rooted" for temporary clearance of blockages and future blockages.

17.     Defendant AMCA, acting through its officers, has engaged in patent "blame the

4

victim" conduct, alleging that sewage disposal line blockages and backups are resultant from misuse of the sewage disposal line by the residents of Unit 1-A.

18.     The usage of the sewage disposal facility for Unit 1-A by the residents has been ordinary and routine and at all times reasonable and foreseeable.

19.     On information and belief, the sewage disposal line for Unit 1-A also provides sewage disposal for other units in the Aspen Mountain Condominiums.

20.     Colorado law requires property owners to give prospective purchasers notice of the condition of property and specifically mandates that property owners give prospective purchasers notice of latent defects in property that would not be discovered in the exercise of reasonable diligence.

21.     The deteriorated and unrepaired condition of the sewage disposal line for Unit 1-A is a classic instance of a latent defect that a prospective purchaser would not discovery in the exercise of reasonable diligence.

22.     The Belize Trust, as the owner of Unit 1-A has an obligation, in the course of selling Unit 1-A, to notify any prospective purchaser the history of past sewage blockages and backups, and of the fact that defendant AMCA's officers have steadfastly refused to carry out definitive and necessary repair and remediation of the cause of past sewage backups and blockages.

5

23.     The physical location of the sewage disposal lines that need to be accessed for definitive repair and remediation is located in whole or in substantial part under, on, or within the general common elements of the Aspen Mountain Condominiums, and is thus beyond the capability of the plaintiff Trust to carry out repair.

24.     The action or, more accurately, inaction, of the defendant AMCA officers, imputed to AMCA, in steadfast refusal to carry out definitive repair of the defect described above, is willful and deliberate, in order to inflict harm on plaintiff, due to long-running differences of opinion between the occupants of Unit 1-A and the AMCA management.  Thus the refusal of AMCA to carry out definitive repair constitutes deliberate, willful, outrageous conduct, calculated to harm the plaintiff and the occupants of Unit 1-A.

25.     As a result of the conduct alleged above, Unit 1-A cannot be marketed for what should be its fair market value, but instead can only be offered as distressed property.

26.     The reasonable fair market value of Unit 1-A, if the above-described defect were remedied, as it needs to be, would be well in excess of $1.1 million, based on recent sales of Aspen condominia with comparable location, square footage and amenities.

27.     The reasonable present fair market value of Unit 1-A, in the present circumstances, is at best no more than 40 percent to 60 percent of its reasonable fair market value as described in the preceding paragraph.  Thus the conduct of the defendant AMCA in deliberate refusal to carry out definitive repair is to deliberately inflict damages on the plaintiff Trust of

hundreds of thousands of dollars.

**First Claim For Relief**
**(Injunctive Relief )**

28.     All preceding paragraphs are incorporated herein by reference.

29.     This Court should enter such preliminary and permanent mandatory injunctive relief as is reasonably necessary to compel defendant AMCA and its officers to carry out definitive repair of the sewage disposal line serving Unit 1-A.

30.     (a)     In the alternative to the relief sought in the preceding paragraph, or in addition thereto, this Court should enter such preliminary and permanent injunctive relief as is reasonably necessary to enable Plaintiff to contract for, and complete definitive repair of the defective sewage disposal line, and to enable Plaintiff's contractors access to the general common elements of the Aspen Mountain Condominiums as is reasonably necessary for that purpose, and to compel the defendant AMCA and its officers and management to execute such applications and documents as are reasonably needed to effectuate definitive repair.

        (b)     In the event of repair carried out pursuant to the immediate preceding subparagraph, this Court should enter defendant AMCA to levy and collect a special assessment from AMCA members to defray the cost of repair contracted for and carried out by Plaintiff's contractor(s).

**Second Claim for Relief**
**(Damages)**

31.     All preceding paragraphs are incorporated herein by reference.

7

32.     Plaintiff should be awarded its damages for the costs of repair and remediation of the defective sewage disposal line, and for costs associated with temporary lodging, temporary repairs and other expenses caused by the June, 2014 blockage and backup. in an amount to be determined in this action.

33.     In addition to the damages sought in the preceding paragraph, Plaintiff should be awarded its damages for the loss of market value of Unit 1-A, in an amount to be determined in this action, but not less than $500,000.00, in any event.

**Third Claim for Relief**
**(Exemplary Damages)**

34.     All preceding paragraphs are incorporated herein by reference.

35.     This claim for relief is reserved for an exemplary damage claim for outrageous conduct, as alleged above, to be added by amendment.

**Prayer For Relief**

WHEREFORE, Plaintiff prays that it should be awarded the following relief:

A.     This Court should enter such preliminary and permanent mandatory injunctive relief as is reasonably necessary to compel defendant AMCA and its officers to carry out definitive repair of the sewage disposal line serving Unit 1-A.

B.     In the alternative to the relief sought in the preceding paragraph, or in addition thereto, this Court should enter such preliminary and permanent injunctive relief as is reasonably necessary to enable Plaintiff to contract for, and complete definitive repair of the defective sewage disposal line, and to enable Plaintiff's contractors access to the general common elements

of the Aspen Mountain Condominiums as is reasonably necessary for that purpose, and to compel the defendant AMCA and its officers and management to execute such applications and documents as are reasonably needed to effectuate definitive repair.

        C.      In the event of repair carried out pursuant to the immediate preceding subparagraph, this Court should enter defendant AMCA to levy and collect a special assessment from AMCA members to defray the cost of repair contracted for and carried out by Plaintiff's contractor(s).

        D.      Plaintiff should be awarded its damages for the costs of repair, remediation and backup damages-related expenses, including alternative lodging, all related to the defective sewage disposal line, in an amount to be determined in this action.

        E.      In addition to the damages sought in the preceding paragraph, Plaintiff should be awarded its damages for the loss of market value of Unit 1-A in an amount to be determined in this action, but not less than $500,000.00, in any event.

        F.      Plaintiff should be awarded its costs of this action, including, as may be provided by applicable law, its reasonable attorney fees.

        G.      Interest as provided by law.

        H.      Such other and further relief as the Court deems appropriate.

### Notice of Potential Determination of Foreign Law
### (Fed. R. Civ. P. Rule 44.1)

Notice is hereby given of the potential of application of the law of Belize. Article 1 of the Plaintiff Trust is titled "PROPER LAW AND FORUM FOR ADMINISTRATION," and

provides "This Settlement is established under the laws of the Country of Belize and the rights of all parties and the construction and effect of each and every provision hereby shall be construed only according to the law of the Country of Belize notwithstanding that the Trustee(s) may be or become from time to time resident or domiciled elsewhere than Belize."

### Demand for Trial by Jury

Plaintiff hereby demands trial by jury of all issues herein appropriate for submission for decision to jury.


Respectfully submitted,

*s/ Geo. M. Allen*_____
GEORGE M. ALLEN
450 Society Drive
Telluride CO 81435
Telephone: 970.369.1000
E-Mail: yxgeo@yahoo.com
Counsel for Plaintiffs


May 4, 2015


Address of the J. Lee Browning Belize Trust:

1 Mapp Street
Third Floor
Belize City, Belize