UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Case No. 15-CV-000945-NYW-CBS

J. LEE BROWNING BELIZE TRUST,

Plaintiff,

-vs-

ASPEN MOUNTAIN CONDOMINIUM ASSOCIATION, INC.,
a Colorado Not-For-Profit Corporation,

Defendants.

PLAINTIFF'S INITIAL DISCLOSURES

(Fed. R. Civ. P. RULE 26(a)(1))

Plaintiff, by its attorney, George M. Allen, submits its Initial Disclosures

STATEMENT OF CLAIMS AND DEFENSES

The Plaintiff is the owner of condominium Unit 1-A in the Aspen Mountain Condominium Complex Aspen, Colorado. A homeowners association, known as the Aspen Mountain Condominium Association, a Colorado Not –For – Profit Corporation, manages the Complex. The Association is the defendant in this suit.



On June 7, 2014 the Unit experienced a plumbing backup. The backup caused serious and extensive sewer damage to the walls and floor of Unit 1-A. The backup was the fourth time in the previous five years that such an event had occurred. Because the water damage consisted of "black"water, an environmental threat was presented and most of the floor of the unit had to be torn up and replaced.

Immediately after the backup occurred a plumbing contractor, Roto Rooter, of Glenwood Springs, Colorado, was called to perform emergency remedial work. The employee who appeared determined that a potential serious problem existed in the fact that the Unit's plumbing structure consisted of iron pipes that had been in place for more than 40 years and were seriously corroded. Furthermore underneath the floor of the Unit was a 90-degree turn, which would periodically be expected to cause congestion producing further backups. The area underneath the floor of the Unit is common space.

The Complex is governed by the Articles of Incorporation of AMCA (originally known as the Aspen Inn Apartments), By-Laws, and a Condominium Declaration. The documentation establishes that the common area of the Complex is owned by the owners as tenants-in-common. The responsibility for the maintenance and repair of all of the common elements of the Complex falls on the Association.

Unit 1-A is a ground floor unit with two units stacked above. One of the units above Unit 1-A is owned by one of the officers of the Association. The plumbing systems of the above units feed into the system, which services Unit 1-A. In the event that an occupant of either of the

above units puts something into the plumbing system, which causes a blockage, the resulting backup will flow back into Unit 1-A.

Roto determined that initially a so-called "drain out" should be installed in a portion of the plumbing system in Unit 1-A, a portion of which would exist in the common space within the Unit. The clean-out would then be used to conduct a video inspection of the entire system. Preliminarily, Roto determined that a device would be required to be installed in the outside common area immediately below the Unit. An estimate was provided for the cost of that device to be approximately $3700.

Roto further indicated that the video would likely confirm that the presence of the 90-degree turn below the floor would have to be replaced in order to be assured that no further backups would occur. Therefore, the entire plumbing system beneath the floor would have to be replaced when the floor was torn up.

Initially, the Association agreed to pay for, as it was required to do, for the drain out, the installation of the device, and the video. The Owners of the Unit contracted with Roto to do the drain out work, the video and the installation of the device upon the assurance of the Association that they would be reimbursed. The understanding was that upon videoing the plumbing system the Roto employee who was in charge of the work would inspect the video to determine whether or not the sub flooring would need to be torn up to replace the entire plumbing system thereunder. The Contractor who was to replace the carpet and flooring was to delay doing that until it was determined whether or not the floor needed to be torn up.

3

All of that work was scheduled for approximately August 20, 2014. The night before the work was to be performed one of the Directors/Officers of the Association contacted Roto and directed Roto not to take the video. The next day, however, it was inadvertently learned that the Roto employee who was to take and inspect the video did not go to the Unit. Instead, two subordinate level Roto workmen went and were instructed by one or more officers of the Association to not video the plumbing system.

The workmen were contacted late in the afternoon by the Owners and, upon learning that a video had not been taken, and were requested to do so. The workmen made four attempts to video the Unit's plumbing system. Three were unsuccessful and the fourth attempt was could not penetrate beyond the 90-degree turn.

### A.  Individuals Likely to Have Discoverable Information.

1.  Judi B. Francis, 0201 Heather Lane, Aspen, Colorado 81611 Ms. Francis is the co-trustee of the Plaintiff and will testify as to all issues in this matter, including, without limitation her conversations with employees of Roto and conversations with Donald Miller, the Treasurer of the Association and a member of the A board of Directors..

2.  Robert A. Francis, Mr. Francis is also a co – Trustee and the Protector of the Plaintiff. He will testify to everything that Ms. Francis will testify

3.  Employees of Roto, including employees named "Monte" and "Doug," who will testify to and confirm all of the telephone conversations had between them and the Owners. They will also authenticate Roto's records pertaining to this event.

4

4. Members of the Board of Directors and Officers of the Association. They will testify as all issues herein.

5. An employee of Roto no longer employed with Roto who will testify to conversations held with the Owners.

6. Coy Brethorst, McMillian Claims, Glenwood Springs, Colorado 970.945.8548. Mr. Brethorst was the second insurance adjuster employed by the Association's liability insurance carrier, American Family. He will testify that he came to inspect the Unit and in doing so met with the Owners. He will also testify to telephone conversations with the Owners and with Safeco.

7. Tony Merkel. 2466 Basalt Mountain Drive, Carbondale, Colorado 81623. 970.625.5181. Mr. Merkel is an independent handyman who visited the Unit shortly after the backup. He will testify to that occasion.

8. A. Ronald Erickson, address and telephone unknown. Mr. Erickson is an employee of a property management company. He can be contacted through that management company which has a telephone number of 970.925.4772. He involved himself initially in this event shortly after the backup occurred. He will testify to the scope and nature of his involvement.

10. Susan Cross. Ms. Cross is a former employee of the management company. She was a briefly involved in this event shortly after the backup occurred. She will testify as to the scope and nature of that involvement.

11. Leslee Francis, 731 S. Mill, Aspen, Colorado 81611. Ms. Francis was an owner of the unit at the time of the backup. She will testify as to the circumstances surrounding the backup and conversations she had with the various individuals listed herein including, without limitation, Mr. Merkel, Ms. Cross and the employees of B. and R. Plumbing.

12. Jay Mencimer, Glenwood Springs, Colorado 81602. Telephone: 970.928.8672. Mr. Mencomer is the owner and principal employee of Mr. Vac a cleaning and restoring company. Mr. Vac did the cleaning and restoration work following the event. He will testify regarding the work, including, without limitation, that the restoration and cleaning work was reasonable and necessary. He will authenticate all of the records of Mr. Vac pertaining to the work and testify to conversations had with any of the listed witnesses herein. This Disclosure includes all sub-contractors of Mr. Vac.

13. Dawn M. Hess, Kelly R. Hart and Patrick Wolfe, American Family Insurance Company, Denver, Colorado 81611, 720.932.1752. All of these individuals were involved in the claim brought by the Owners and will testify thereto, authenticate numerous emails and at other correspondences between American Family and the Owners. There were also several conversations, which the owners had with Mr. Wolfe.

14. Steve Daubenmier, 731 South Mill Street, Aspen, Colorado 81611. Telephone number unknown. Mr. Daubenmier is the President of the Aspen Mountain Condominium Association and will testify to his knowledge of the events, which are the subject of this litigation. He will also authenticate correspondences between himself and the Owners.

15.     Nick Ballor and Sherry Robbins, Safeco Insurance Company, P.O. Box 515097, Loss Angeles, California 90051. Both of these individuals were involved with the adjustment of a portion of the claim and will testify thereto. They will authenticate items of correspondence between Safeco and the Owners.

16.     Peter J. Martin Insurance, LLC, Carbondale, Colorado. This Company is the local agent for Safeco Insurance and was involved in the adjustment of the interior damage. Its representatives will testify as to the adjustment of the claim made against Safeco and conversations with the Owners and with Mr. Brethorst.

17.     Donald Miller, 731 S. Mill Street, Aspen, Colorado 81611. 970.544.8164. Mr. Miller will testify to his involvement with the event and to conversations held with the various witnesses.

18.     Various employees of B and R Plumbing, Carbondale, Colorado, 81623. 970.963.3814.   B and R Plumbing became involved in the restoration work after Roto Rooter was terminated by an individual purporting to represent the Board of Directors of the Association. It viewed the video and concluded that the plumbing situation in the Unit could only be rectified by replacement of the sewer.

19.     Employees of Aspen Valley Mechanical and Maintenance, 208 E. Valley Road, Suite104-145, Carbondale, Colorado 81623. This Company has performed work in the Unit and will be a witness of thereto.

20. John Lassalette, 1480 Ute Avenue, Aspen, Colorado 81611. Mr. Lassalette could testify to remarks he made germane to the Association's liability for the damages, which are the subject of this matter.

21. An individual with the first name "Tom," who is the manager of the Aspen Sanitation District, Aspen, Colorado 81611. He will testify as to his involvement with this event and will sponsor a diagram he prepared for the Owners.

**B.     Documents**

1. A copy of the video taken the afternoon of August 20, 2014.

2. Numerous emails exchanged between the Owners and the Association.

3. All of the Condominium documentation of which the Court can take judicial notice.

3. Numerous emails and as their correspondence exchanged between the Association and the Owners.

4. Numerous emails and other correspondence between the Owners and American Family.

5. Correspondence between the Owners, the Condominium Association and the Insurance Carriers.

6. Records establishing the proof of payment by the Owners of amounts charged to the Owners, which were the responsibility of the Association including checks.

7. Invoices, work orders, and any other documentation reflecting the remedial work done as a result of the backup by any contractor.

8. Two work orders/contracts between Roto Rooter and the Owners.

9. All records of the Aspen Mountain Condominium Association pertaining to this event including, without limitation, all personal emails of Mr. Miller, Mr. Bruce Lynton, and Mr. Daubenmier, including emails and any other correspondence between these individuals and Mr. Erickson and the Association's Attorneys to the extent that those communications pertained to this event.

10. Invoices for aspects of the remedial work, which were paid by the Owners.

11. Notes made by the Owners of conversations held with Roto Rooter, and Mr. Brethorst, and any other notes of telephone conversations.

12. A copy of the diagram referred to above prepared by "Tom."

**C.   Damages**

Plaintiff wishes to sell Unit 1-A. The Aspen real property market is broker-driven. Potential buyers come from throughout the United States and elsewhere in the world. Most prospective buyers are in the Aspen area for only a few days to a few weeks at a time and they virtually always engage the assistance of real estate brokers to explore the market.

Brokers are either reluctant to list and show problem properties or refuse to do so altogether. Unit 1-A, with a history of multiple sewage backups in recent years, is essentially unsalable. Brokers will not list it for sale, thus keeping it out of the multiple listing service and out of any degree of visibility in the market.

But for the history of sewage backups, Unit 1-A would command a sales price of over $1 million, based on recent sales of comparable Aspen properties. The damages for Plaintiff are thus on an order of $1 million-plus.

### D.    Insurance

Defendant Aspen Mountain Condominium Association, Inc. at the time of the incident in question through a policy of insurance issued by American Family Insurance Company. Defendant has reported that a copy of the insurance policy has been requested and will be produced upon receipt.

Respectfully submitted,

*s/ Geo. M. Allen*

George M. Allen

206-A Society Drive

Telluride CO 81435

Telephone: 970.369.000

Facsimile: 720.302.2282

yxgeo@yahoo.com

Counsel for Plaintiff

## Certificate of Service

I hereby certify that I have, at **Los Angeles, California, this 28th day of August, 2015,** served the document(s) described below on counsel/persons set forth below by the means of service set forth below:

**Document(s) Served**

PLAINTIFF'S INITIAL DISCLOSURES (Fed. R. Civ. P. RULE 26(a)(1))

**Means of Service**

The ECF Filing System

**Counsel/Person(s) Served**

Benjamin M. Wegener, Esq.

743 Horizon Court, Suite 200

Grand Junction CO 81506

970.242.2645

ben@youngelaw.com

*s/ Geo. M. Allen*

George M. Allen